Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 5496 | **DATE** | 10/1/2003 |
| **CASE TITLE** | PENN, L.L.C. vs. NEW EDGE NETWORK, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant's motion to dismiss for improper venue [10-1] is granted. ENTER MEMORANDUM OPINION AND ORDER.

*/s/ Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | |
| | No notices required. | | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | OCT 0 3 2003 date docketed | |
| | Notified counsel by telephone. | U.S. DISTRICT COURT CLERK | | | |
| | Docketing to mail notices. | | | | 15 |
| | Mail AO 450 form. | 03 OCT -2 PM 12: 10 | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 1-03 | | 10/1/2003 date mailed notice | |
| CB | courtroom deputy's initials | | | PW | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PENN, L.L.C., )
)
        Plaintiff, ) No. 03 C 5496
)
v. ) Suzanne B. Conlon, Judge
)
NEW EDGE NETWORK, INC., )
)
        Defendant. )

DOCKETED
OCT 0 3 2003

## MEMORANDUM OPINION AND ORDER

In this diversity action, Penn, LLC (Penn Media) sues New Edge Network, Inc. (New Edge) for tortious interference with prospective business relations, tortious interference with economic advantage, and fraud. New Edge responds with this motion to dismiss for lack of personal jurisdiction and improper venue pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3).

### BACKGROUND

New Edge is a national business broadband service provider headquartered in Vancouver, Washington. New Edge provides, among other things, area networks and dedicated high-speed internet access to small businesses and entrepreneurs. Penn Media is an online media and publishing company based in the south suburbs of Chicago. In the Spring of 2002, Penn Media approached New Edge about securing T3 internet services for its business. Penn Media's business depended on its ability to use this internet access to send and receive high volumes of email. To that end, the parties entered into a service agreement in July 2002. New Edge agreed to provide Penn Media with

1

15

email and internet access for purposes of sending commercial email and advertising. New Edge drafted the agreement, which contained a forum selection clause providing:

> "This agreement shall be governed by, construed under, and enforced in accordance with, the laws of the State of Washington without reference to its choice of law principles. For any action or suit to enforce any right or remedy of this agreement, (except for actions to enter or collect on judgments) the parties consent to exclusive jurisdiction and venue in Clark County, Washington. . . ."

(Motion to Dismiss, Ex. B at ¶ 15.) The agreement incorporated by reference a modified version of New Edge's Acceptable Use Policy ("AUP"), which establishes limitations on Penn Media's internet usage and purports to give New Edge the right to unilaterally halt Penn Media's internet use if it violates those limitations. (*Id.* at ¶ 11.)

In February 2003, New Edge unilaterally terminated Penn Media's internet services. Penn Media filed a two-count complaint in the Circuit Court of Cook County claiming that New Edge interfered with its expected business relationships and that New Edge committed fraud. New Edge responded with this motion to dismiss, arguing that it lacks sufficient contacts with Illinois to confer personal jurisdiction, and in any event, that Penn Media had agreed to litigate the service agreement exclusively in Clark County, Washington. The issue before this court is whether the forum selection clause applies to Penn Media's tort and fraud actions.

## DISCUSSION

New Edge moves to dismiss Penn Media's complaint for improper venue based on the forum selection clause in the service agreement. A motion to dismiss for improper venue based on a forum selection clause is properly brought under Rule 12(b)(3). *See Frietsch v. Refco, Inc.*, 56 F.3d 825, 830 (7th Cir. 1995); *Weidner Comm. Inc. v. H.R.H. Prince Bandar Al Faisal*, 859 F.2d 1302, 1306

(7th Cir. 1988); *Chapman v. Norwegian Cruise Line Ltd.*, No. 01 C 50004, 2001 WL 910102, *1 (N.D.Ill. July 6, 2001). Penn Media bears the burden of establishing that it has chosen the proper venue and that the forum selection clause is inapplicable. *See Fasti USA v. Fasti Farrag & Stipsits GMBH*, No. 02 C 8191, 2003 WL 1581472, *2 (N.D.Ill. March 26, 2003). To that end, consideration of the contract attached to New Edge's motion to dismiss is proper because Penn Media referred to the agreement in its complaint and it is central to Penn Media's contention that venue is proper. *See Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th Cir. 2002).

Contractual forum selection clauses are *prima facie* valid and should be enforced like any other contractual provision unless they are unreasonable or the product of fraud or undue influence. *See Northwestern Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 375-76 (7th Cir. 1990); *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S. Ct. 1907 (1972). Penn Media does not argue that the forum selection clause is unenforceable on *Bremen* grounds. It contends that the forum selection clause was drafted narrowly and expressly limited to contract disputes, and therefore does not encompass tort and fraud claims.

Penn Media argues that the phrase "any right or remedy of this agreement" has a narrow meaning, applying only to contract claims. This is an interpretation that language and case law do not support. The provision is limited in application to actions relating to the enforcement of rights or remedies of the contract. The core of the tortious interference claim involves Penn Media's right to service under the agreement and New Edge's right to terminate the agreement. The fraudulent representations at issue are all contractual provisions of the contract. *See Sompo Japan Ins., Inc. v. Alarm Detection Systems*, No. 03 C 2322, 2003 WL 21877615, *2 (N.D.Ill. Aug. 6, 2003) (forum

3

selection clause providing "should any portion of this contract have to be legally enforced" applied to tort action). "All disputes the resolution of which arguably depend upon the construction of an agreement 'arise out of' that agreement" for purposes of a forum selection clause.[1] *Omron Healthcare, Inc. v. Maclaren Exps., Ltd.*, 28 F.3d 600, 603 (7th Cir. 1994); *American Patriot Ins. Agency, Inc. v. Mutual Risk Management, Ltd.*, 248 F. Supp.2d 779, 785 (N.D.Ill. 2003); *Sompo Japan Ins., Inc.*, 2003 WL 21877615 at *2 ("Allegations of common law tort theories based upon contractual obligations, although sounding in tort rather than contract, are nonetheless defined by the contract").

Penn Media argues that its tortious interference and fraud claims do not require application or interpretation of the service agreement. The tortious interference claim alleges that New Edge frustrated Penn Media's expected advertising sales by terminating its internet service. This claim is intimately related to the service agreement and the rights New Edge may have to cancel service pursuant to the AUP incorporated into the contract. Whether New Edge purposefully interfered with Penn Media's business necessarily involves a determination of whether New Edge was authorized under the service agreement to terminate Penn Media's internet service. If enforcement of a provision in the service agreement is clearly a defense to a claim, that claim involves a right or remedy under the contract and should fall within the scope of the forum selection clause. *See Omron Healthcare*, 28 F.3d at 603; *Manetti-Farrow, Inc. v. Gucci America*, 858 F.2d 509, 514 (9th Cir. 1988); *American Patriot Ins. Agency*, 248 F. Supp.2d at 785; *Reproductive Surgery & Medicine,*

---

[1] *Omron Healthcare* cautions against a "but-for" understanding of language referring to a "disputes arising out of" agreement. *See* 28 F.3d at 600. In this case, the agreement is narrower than an "arising out of" agreement. Nonetheless, the suit is still controlled by the forum selection clause because it involves the enforcement of rights and remedies under the contract.

4

*P.C. v. OSF Healthcare System, OSF*, No. 03 CV 0634 DFH, 2003 WL 21852554, *1-2; *Pendleton Enterprises, Inc. v. Iams Co.*, 851 F. Supp. 1503, 1505 (D. Utah 1994). Otherwise, a clever party could simply avoid its contractual obligations through sophistry.

Similarly, Penn Media contends that New Edge fraudulently induced it to enter the service agreement by promising its business activities came within the scope of New Edge's AUP. Penn Media argues that resolution of this claim does not require application or interpretation of the service agreement because New Edge's statements "would be false regardless of what the service agreement says, and even if the service agreement did not exist." (Opposition Brief at 9.) However, resolution of the fraud claim requires the court to consider the enforcement of rights and remedies under the service agreement, as well as the meaning of the AUP. *See American Patriot Ins. Agency*, 248 F. Supp.2d at 785 (alleged fraud and misrepresentations occurred because the agreement was in place). Penn Media concedes that the AUP purports to grant New Edge both the unilateral right to change the terms of the AUP and to terminate service without informing Penn Media. At the heart of the fraud claim are issues regarding what New Edge promised to Penn Media and what Penn Media knew before it acted. These issues cannot be resolved without interpreting and applying the service agreement. *See OSF Healthcare*, 2003 WL 21852554 at *1-2; *See Fasti USA*, 2003 WL 1581472 at *2.

The forum selection clause applies whenever an action or suit seeks to enforce rights or remedies under the service agreement. Disposition of Penn Media's tort and fraud claims requires determinations of rights and remedies under the service agreement. New Edge and Penn Media freely contracted to litigate their disputes in Clark County, Washington. This court will hold them to their bargain.

5

## CONCLUSION

Penn Media fails to establish that the forum selection clause contained in its agreement with New Edge is inapplicable to its tortious interference and fraud claims. Both claims involve extensive interpretation and application of the service agreement and the AUP before they can be resolved. Accordingly, venue is improper in the Northern District of Illinois.

October 1, 2003                    ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge